Case 2:15-cv-00207 Document 97 Filed on 12/07/16 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
December 07, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ARTAVIAS T EDWARDS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:15-CV-207 |
| § | |
| TEXAS BOARD OF PARDONS AND § | |
| PAROLES, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

This is a civil rights action filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Pending is Defendant's Motion for Summary Judgment. (D.E. 83). For the reasons stated below, it is respectfully recommended that the Court **GRANT** Defendant's Motion for Summary Judgment and **DISMISS** Plaintiff's claim for excessive force with prejudice.[1]

### I.  JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

---

[1] On January 6, 2016, the undersigned entered a Memorandum and Recommendation recommending all claims but Plaintiff's excessive force claim against Defendant Bland be dismissed. (D.E. 29). The undersigned respectfully recommends the Court adopt both recommendations, dismiss all of Plaintiff's claims and enter final judgment in favor of Defendants.

## II.   PROCEDURAL BACKGROUND AND PLAINTIFF'S ALEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined at the Coffield Unit in Tennessee Colony, Texas.  He is serving a 38-year sentence entered on December 21, 1993, for burglary of a vehicle in Bell County, Texas.

Plaintiff initially filed this case on May 1, 2015, as a letter with the Court requesting an order compelling the Texas Board of Pardons and Paroles to provide him with the transcripts and evidence used at his parole revocation proceeding and to preserve evidence. (D.E. 1).  On June 25, 2015, a *Spears*[2] hearing was held and Plaintiff explained that his claims involved the revocation of his parole based on allegations he unlawfully solicited a minor.  Plaintiff was allowed to amend his complaint to more clearly set forth his claims.  (D.E. 12).  Plaintiff filed an amended complaint on August 31, 2015 naming twenty-nine defendants.  (D.E. 19).

On January 6, 2016, the undersigned entered a Memorandum and Recommendation recommending only the excessive force claim against Defendant John Bland, a corrections officer at the Aransas County Detention Center, be retained stemming from an incident on November 15, 2014.  (D.E. 29).  This M & R remains pending before the District Judge.

An amended scheduling order was entered and on September 30, 2016, Defendant Bland filed a Motion for Summary Judgment.  (D.E. 83).  On September 12, 2016 and

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating testimony given at a *Spears* hearing is incorporated into the pleading).

September 26, 2016, Plaintiff filed a Motion to Compel and Motion for Copies of Court Documents, both of which were denied on October 4, 2016. (D.E. 84). Plaintiff was advised his response to Defendant's Motion for Summary Judgment was due on or before October 21, 2016 and that his failure to file a timely response would be taken as a representation of no opposition. (D.E. 84). On October 26, 2016, Plaintiff requested additional time to file a response and was given until November 30, 2016. (D.E. 86 and D.E. 87). To date, Plaintiff has not filed a response which, pursuant to Local Rule 7.4 and the Federal Rules of Civil Procedure, is taken as a representation of no opposition. However, the undersigned has also considered the merits of the pending motion.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*

The movant has the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323 (1986). The moving party bears the burden of identifying those portions of the record he or she believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden then shifts to the non-movant to show the existence of a genuine fact issue for trial. *Id.*; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-97 (1986).

The non-movant cannot merely rest on the allegations of the pleadings or on unsubstantiated, subjective beliefs. *Anderson*, 477 U.S. at 248-49. Plaintiffs must establish there are material, controverted facts precluding summary judgment. *Id*. Additionally, the non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.")(citations omitted); *see also Anderson*, 477 U.S. at 249-52. Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Where the non-movant fails to present evidence to support his or her claims, there can be no genuine issue of material fact because of the complete failure of proof on an essential matter for which the non-movant bears the burden of proof renders all other issues immaterial. *Id.* at 323.

## IV. SUMMARY JUDGMENT EVIDENCE

Defendant offers the following summary judgment evidence:

*Spears* hearing transcript (D.E. 83-2)

Affidavit of Defendant John Bland (D.E. 83-7)

DVD video recording of November 15, 2014 incident from different angles and locations (D.E. 83-3 to 83-6, 83-8 and 85)

### A. *Spears* Hearing Transcript

Plaintiff testified he was in the recreation yard and after pressing the button to notify the correctional officers that he wanted to be removed from the recreation yard, the correctional officers became annoyed. (D.E. 83-2, Pages 3-4). Plaintiff then testified that in the presence of two other corrections officers and a nurse, Defendant Bland purposefully and forcefully threw Plaintiff's arms over Plaintiff's head and twisted them, and then forced Plaintiff to the wall and then to the ground. (D.E. 83-2, Pages 4-5). Plaintiff further alleges he was later taken to medical and prescribed antibiotic ointment for small lacerations caused by Officer Bland's fingernails digging into Plaintiff's skin. (D.E. 83-2, Page 6). Plaintiff also alleges he did not have use of his left arm for three weeks after the incident. (D.E 83-2, Page 7).

### B. Affidavit of Defendant Bland

Defendant Bland averred, in relevant part, as follows:

> On November 15, 2014, while at work [at the Aransas County Detention Center] at approximately 6:15 p.m., inmate Edwards was alone in the recreation yard. At approximately 6:15 p.m., inmate Edwards pressed the intercom and requested to be transported back to his cell in the Delta Pod. I was located in the Charlie Pod and was in charge of the

inmates in the Charlie Pod.  Officer Hinojosa was the officer in charge of the inmates in the Delta Pod.  From where I was located in the Charlie Pod, I could see through the recreation yard into the Delta Pod and could see that Officer Hinojosa was assisting passing out medications.

When inmate Edwards pressed the intercom call button in the recreation yard, it first calls to the Charlie Pod.  When I received inmate Edwards call on the intercom, I advised him that Officer Hinojosa was assisting in the passing out of medications and that when he was finished he would transport inmate Edward back to his cell.  From where inmate Edwards was standing in the recreation yard, he too could see into the Delta Pod and view Officer Hinojosa passing out medications.  Inmate Edwards then proceeded to press the intercom call button several more times.  I then advised inmate Edwards that unless he was having an emergency, that he needed to stop pressing the intercom call button as he could see that Officer Hinojosa was busy and all inmate Edwards was doing was being disruptive.  From where I was located, I could see inmate Edwards in the recreation yard and it was clear to me no emergency existed.  However, inmate Edwards did the exact opposite and disregarded my instruction and pressed the intercom call button again.  I then personally went to the recreation yard to advise inmate Edwards to stop being disruptive and to follow my instructions and stop pressing the intercom call button.  Once I arrived at the recreation yard, inmate Edwards face me in what I perceived was a confrontational demeanor.  He did not comply with my commands.  I even pointed out to inmate Edwards that he could see that Officer Hinojosa and Nurse Karla were busy passing out medications and that his constant pressing of the intercom call button was becoming a disruption to the facility.  As I was explaining to inmate Edwards that he needed to do as instructed and stop pressing the intercom call button inmate Edwards talked back to me and challenged my explanation.

Inmate Edwards and I exchanged words for a few seconds, then Officer Hinojosa arrived in the recreation room.  Shortly after Officer Hinojosa arrived, I instruct[ed] inmate Edwards to place his hands behind his back and walk out of the recreation room.  Inmate Edwards placed his hands behind his back, but failed to exit the recreation room.  As such, I used my hands to gain control of inmate Edwards and place a basic protective restraint hold on him and escort him out of the recreation yard, down a hallway in the Delta Pod to a holding cell.  The whole incident only lasts a matter of seconds.  During this incident inmate Edwards was not taken to the ground.  Nor did I ever push inmate Edwards into the wall.  I never hit, kicked or punched inmate Edwards.  I did not use pepper spray or a taser on inmate Edwards.  I used what I believed to be the least amount of

force possible in using my hands to place inmate Edwards in a basic protective restrain hold to secure him and [lead] him to a holding cell.

Inmate Edwards never complained of suffering an injury. He never requested to go to medical to get checked out. I never dug my nails into inmate Edwards' back. It has been made known to me that inmate Edwards alleges that he couldn't use his left arm for multiple weeks after the incident. To the contrary, I observed inmate Edwards mopping the floor of the hallway in the Delta Pod within approximately 6 hours after this incident occurred. I did not observe inmate Edwards to have any difficulty using his left arm. (D.E. 83-7, Pages 1-2).

**C.  DVD Recording**

A video recording of the entire incident from various angles without sound was provided to the Court. (D.E. 83-3 to 83-6, 83-8 and 85). The camera in the recreation yard from VR: 18:18:12 to 18:19:43, approximately 1 ½ minutes, on November 15, 2014 shows Plaintiff alone in the recreation yard pacing, pressing the intercom button multiple times, communicating with someone in the Charlie Pod several times and looking through the windows into the Delta Pod. At VR: 18:19:43, Defendant Bland enters the recreation yard from the Charlie Pod and he and Plaintiff stand facing one another, speaking with one another until VR: 18:19:59 when another correctional officer, presumably Officer Hinojosa, opened the door leading to the Delta Pod. At VR 18:20:10, Plaintiff places his hands behind his back and Defendant Bland places his hands on Plaintiff's shoulder and walks with Plaintiff through the door into the Delta Pod at VR 18:20:12 being held open by Officer Hinojosa.

The camera in the Delta Pod hallway (Angle 2) shows Plaintiff and Defendant Bland walking from the recreation yard and down the length of the hallway beginning at VR 18:20:12. At VR 18:20:13, Plaintiff's shoulder bumps the door from the recreation

area into the Delta Pod being held open by Officer Hinojosa.  Defendant Bland has his arms around Plaintiff's, which remained behind Plaintiff's back.  At VR 18:20:20, Plaintiff's arms, still behind his back, are raised by Defendant Bland at or slightly below Plaintiff's shoulder height while the two walk down the hallway to the secured door at the opposite end.  At VR 18:20:23, a female staff member walks down the same hallway pushing a medication cart.  The camera in the next Delta Pod hallway (Angle 3) shows Plaintiff being held in the same hold by Defendant Bland at VR 18:20:35.  The two walk in this position down the hallway, trailed by two other correctional officers until VR 18:20:56 when all three exit the hallway through the door on the other end.  The other camera in the same Delta Pod hallway (Angle 4) shows the same beginning at VR 18:20:46.

      The remaining video of a hallway begins the early the next morning on November 16, 2014, approximately six hours after the incident at issue, at VR 00:58:27 and shows a correctional officer releasing Plaintiff from a secured room and Plaintiff pushing a cart with both hands.  The video then continues with excerpts through VR 02:24:46.  Throughout the video, Plaintiff is seen pushing a cart with both arms, pushing a large broom continuously with both arms while sweeping the hallway, smiling and talking to others while gesturing with both arms, and continuously pushing a mop with both arms while mopping the same hallway as well as twisting and wringing the mop, including repeatedly pushing down a handle on the mop bucket with his left arm.

## V.     DISCUSSION

### A.     Excessive Use of Force

Plaintiff is suing Defendant Bland for excessive use of force. Defendant Bland "does not dispute that Plaintiff was a pre-trial detainee on the child molestation charge" but asserts Plaintiff "was also a post-conviction prisoner as to the automobile burglary claim for which he was on parole." (D.E. 83, Page 5). Claims of excessive force raised by convicted prisoners are evaluated under the Eighth Amendment's prohibition against cruel and unusual punishment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) (continuing to hold that excessive force claims for convicted prisoners are evaluated under the Eighth Amendment, while such claims for pretrial detainees are examined under the Fourteenth Amendment's Due Process Clause). Regardless of which standard is used, for the reasons stated below, it is respectfully recommended Defendant's Motion for Summary Judgment be **GRANTED**.

### 1.     Eighth Amendment

Inmates have a constitutional right to be free from the use of excessive force. *Anthony v. Martinez,* 185 Fed. Appx. 360, 363 (5th Cir. 2006). To state a claim for excessive force, a prisoner-plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis,* but not necessarily significant. See *Hudson v. McMillian,* 503 U.S. 1, 6, 10 (1992); *Gomez v. Chandler,* 163 F.3d 921, 923-24 (5th Cir. 1999); *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). The factors to be considered are (1) the extent of the injury suffered; (2)

the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez*, 163 F.3d at 923.

In *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010) (per curiam), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 1180. The Court grounded this conclusion on the principle that "'the core judicial inquiry' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 1178 (citations omitted).

Although a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement "is directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 1010 F.3d 430, 434-35 (5th Cir. 1996)(citations omitted); *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)(noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999)("What constitutes an injury in an excessive force claim is ... subjective -- it is defined entirely by the context in which the injury arises."). In general, the courts have concluded that the amount of injury necessary to satisfy the requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Williams,* 180 F.3d at 703-04. Thus, courts may look to the seriousness of the injury to determine "whether the use of force could

plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers,* 475 U.S. 312, 321 (1986).

In addition, Defendant has raised the defense of qualified immunity, and therefore, the Court must also examine the actions of the Defendant in the qualified immunity context. *Kitchen v. Dallas Cty., Tex.,* 759 F.3d 468, 478-79 (5th Cir. 2014). In claims brought under 42 U.S.C. § 1983, "when a defendant invokes the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *See Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008); *Bazen ex rel. Bazen v. Hildalgo Cty.,* 246 F.3d 481, 489 (5th Cir. 2001). Because qualified immunity constitutes an immunity from suit rather than a mere defense to liability, adjudication of a defendant's entitlement to qualified immunity "should occur 'at the earliest possible stage in litigation.'" *McClendon,* 305 F.3d at 323 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). The two-part inquiry into qualified immunity is first "whether a constitutional right would have been violated on the facts alleged," and second "whether the right was clearly established" at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 200 (2001). Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

## 2. Fourteenth Amendment

The Supreme Court has recently held in *Kingsley* that an objective reasonableness standard applies to a pretrial detainee's excessive force claims under the Fourteenth Amendment. *Kingsley*, 135 S.Ct. at 2473. Prior to *Kingsley*, the Court in *Hudson* stated the "core judicial injury" was "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. However, now the requirement that the "pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable" is no longer applicable to a pretrial detainee's excessive force claim. *Kingsley*, 135 S.Ct. at 2470 (emphasis in original). Rather, "a pretrial detainee must show only that the force purposefully or knowingly used against him was objectively unreasonable." *Id*. at 2473-75.

### B. Analysis

Because the video of the incident at issue clearly negates Plaintiff's allegations, it is immaterial whether Plaintiff is classified as a convicted prisoner or a pretrial detainee.

As a convicted prisoner, pursuant to the Eighth Amendment, there can be no claim of excessive force if there is no evidence to suggest that the force was administered maliciously and sadistically for the very purpose of causing harm. *Hudson,* 503 U.S. at 6. In this case, the video recording negates any claim that the force employed by Defendant was applied maliciously or sadistically. The video captures the entire event. It shows clearly that the minimum amount of force was applied by all prison officials involved in an effort to maintain control and order of the situation. Further, contrary to Plaintiff's claims at the *Spears* hearing that he was slammed to the ground and could not use his arm

for three weeks after the incident, the video shows he was never on the ground and video from approximately six hours after the incident shows Plaintiff using both arms to vigorously sweep and mop as well as gesture without any issue. Additionally, there are no medical records demonstrating Plaintiff was treated for any injuries related to this incident.

While it is true that Plaintiff's sworn pleadings are competent summary judgment evidence, the Fifth Circuit has held that a non-movant cannot satisfy his summary judgment burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007). Moreover, to state a claim of excessive force, Plaintiff must establish not only that Defendant's conduct caused more than a *de minimis* injury, but that it was done so sadistically or maliciously. *Siglar,* 112 F.3d at 193. As previously noted, the core judicial inquiry is not on the injury sustained, but whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Wilkins,* 559 U.S. at 38. The video shows nothing but restraint and professionalism with no visible attempt to injure Plaintiff.

Additionally, applying an objective reasonableness standard to a pretrial detainee's excessive force claims under the Fourteenth Amendment, there is no evidence that Defendant Bland's use of force was excessive. *Kingsley,* 135 S.Ct. at 2473-75. The video shows Plaintiff in the recreation yard repeatedly pressing the intercom button even after being instructed several times by Defendant Bland to stop doing so. Further, after Defendant Bland went to the recreation yard, Plaintiff is seen arguing with Defendant

Bland. Defendant Bland then had Plaintiff place his hands behind his back and Defendant Bland secured Plaintiff's hands with his own and escorted Plaintiff to a holding cell. At no time was Plaintiff thrown to the ground or into a wall or otherwise physically assaulted. Further, in spite of Plaintiff's claims, there is no evidence Plaintiff sustained any injury or sought medical treatment.

In short, there was no excessive force in violation of Plaintiff's constitutional rights, under either the Eighth or the Fourteenth Amendment.

### C. Eleventh Amendment immunity.

If the Court determines there is an issue of material fact, the undersigned alternatively recommends as follows. Plaintiff did not indicate whether he is suing Defendant Bland in his official or individual capacity, so it is assumed Plaintiff is suing him in both. Further, it is unclear what damages Plaintiff is seeking from Defendant Bland.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996); *Aguilar v. Tex. Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Ky. v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official

capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Thus, to the extent Plaintiff is suing Defendant in his official capacity for money damages, such claim is barred by the Eleventh Amendment, and accordingly, it is respectfully recommended that the Court dismiss any such claims with prejudice.

## VI. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that the Court **GRANT** Defendant's Motion for Summary Judgment (D.E. 83) and **DISMISS** Plaintiff's excessive claims against Defendant Bland with prejudice. It is further recommended the Court also adopt the undersigned's January 6, 2016 Memorandum and Recommendation, **DISMISS** all of Plaintiff's claims and enter final judgment.

ORDERED this 7th day of December, 2016.

_____
Jason B. Libby
United States Magistrate Judge

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).